```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

CHARTER PRACTICES              :
INTERNATIONAL, et al.,         :
                               :
     Plaintiffs,               :
                               :
     v.                        :    CASE NO.  3:12cv1768(RNC)
                               :
JOHN M. ROBB,                  :
                               :
     Defendant.                :
```

DISCOVERY RULING and ORDER

The plaintiffs, Charter Practice International and Medical Management International, bring this action against their former franchisee, defendant John Robb. The plaintiffs operate company-owned and franchised Banfield Pet Hospitals. The defendant is a veterinarian who held a franchise for a Banfield Pet Hospital in Stamford, Connecticut. The plaintiffs terminated the defendant's franchise agreement because, among other reasons, he administered half doses of vaccinations. (Doc. #131-3.) The plaintiffs allege breach of contract, violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq., trespass and defamation/trade disparagement. (Doc. #131.) The defendant counterclaimed alleging breach of contract, breach of the implied covenant of good faith and fair dealing, violation of CUTPA and negligent infliction of emotional distress. (Doc. #159.) Pending before the court are the defendant's motion to compel the plaintiffs' responses to interrogatories and request for attorney's fees (doc. #215), the plaintiffs' motion for protective order (doc.

#240) and the plaintiffs' motion for leave to amend their objections to interrogatories. (Doc. #242.) For the reasons stated herein, the defendant's motion to compel is granted in part and denied in part, the plaintiffs' motion for protective order is denied and the plaintiffs' motion for leave to amend their objections is granted.

I. Introduction

At issue are the plaintiffs' responses to the defendant's First Set of Interrogatories. The parties' disagreements have spawned a morass of filings spanning a six month period. See doc. ##215, 222, 240, 242, 244, 245, 247, 248 and 249. Both sides have failed to follow proper procedure. Their failure to observe procedural requirements unnecessarily complicated and delayed resolution of the issues and resulted in a cluttered and confusing docket. Each argues (repeatedly) that the court should excuse its failure, but find that the other side's procedural noncompliance operates as a waiver. Under the circumstances of this case, at this juncture, the court declines to find waiver as to either party and proceeds to the merits.

II. Procedural History

In January 2014, the defendant served the plaintiffs with interrogatories. The plaintiffs objected to all 25 interrogatories on the grounds of relevance. In May 2014, the defendant filed the instant motion to compel. (Doc. #215.) The plaintiffs opposed the

motion on the grounds that it was untimely and that the interrogatories sought irrelevant information. (Doc. #222.)

During oral argument, plaintiffs told the court that they would "answer interrogatories 11, 12, 14, 17, 18, 19, 20, 23 and 24." (Doc. #243, Tr. 10/1/14 at 3.) On October 8, 2014, plaintiffs filed a "Notice." (Doc. #237.) After oral argument, the Notice said, only interrogatories 1-10, 13, 15 and 16 remained in dispute. As to those requests, "plaintiffs' counsel agreed to provide written answers to interrogatories 1-4, 7, 8, 10, 13, 15 and 16 on or before October 15, 2014. This brings the total number of agreed-upon interrogatories to 22 (out of a total of 25 propounded interrogatories)." (Doc. #237.)

One week later, on October 15, 2014, the plaintiffs sought leave to assert an additional objection - "confidentiality" - to interrogatories 3 - 10, the majority of which they had told the court that they would answer. (Doc. #242.) They also sought an "attorneys-eyes-only" protective order for this same group of interrogatories. (Doc. #240.) On top of all that, the plaintiffs said that they did not have some of the data sought. (Doc. #241 at 6 n.1.)

The next day, the plaintiffs served "Supplemental Responses and Amended Objections" to interrogatories 1-4, 7, 8, 10, 13, 15 and 16, the interrogatories they had agreed to answer. (Doc. #245, Ex. 2.) They asserted confidentiality as an objection to certain

3

of the requests[1] and, as to others, said they had no responsive information.

On November 6, 2014, the plaintiffs served defendant with their "Second Amended/Supplemental Responses and Objections to Defendant['s] First Set of Interrogatories." (Doc. #248, Ex. 2.) As to interrogatories 11, 12, 14 and 17, which the plaintiffs had agreed during oral argument they would answer, they responded that they did not track the data requested. A flurry of briefing followed the plaintiffs' supplemental responses and objections. See doc. #246, 247, 248, 249.

III. Discussion

    A.   Motion to compel

The defendant initially sought to compel responses to all 25 interrogatories. The parties resolved some of the requests - interrogatories 2, 14, 19, 20, 23 and 24. In addition, the defendant withdrew interrogatories 21, 22 and 25. (Doc. #245 at 2.)

---

[1] The plaintiffs' supplemental objection to interrogatories 3, 4, 7, 8 and 10 is as follows:
> Plaintiffs also object to this interrogatory as requesting information that is a trade secret or other confidential research, development, or commercial information under Fed. R. Civ. P. 12(c)(1)(G) [sic]. . . . Plaintiffs use reasonable efforts to keep this information confidential and disclosure of the information would put Plaintiffs at a competitive disadvantage because the data could be misconstrued, and used to tarnish Plaintiffs' reputation. Also, Plaintiffs would be unable to respond with data from other veterinary clinics. Accordingly, Plaintiffs have moved for a protective order and to assert confidentiality as an objection. (Doc. #245-2.)

As to all these requests, the motion to compel is denied as moot.

The following sixteen interrogatories remain in dispute: 1, 3 - 13 and 15 - 18. The court considered each of the plaintiffs' relevance objections and determined that the requests sought relevant information.[2] The plaintiffs' relevance objections therefore are overruled. Their confidentiality objection is addressed <u>infra</u>. The court rules on the requests as follows:

1. Interrogatory 1 is denied. The defendant seeks the average number of anesthetic dental procedures performed each year at each of the Banfield Pet Hospitals from 2008 through 2012. The plaintiffs respond that they do not track this statistic and have explained why such a figure cannot be calculated. Pursuant to Rule 33(d), they provided a spreadsheet of the total number of

---

[2]The plaintiffs provided responses "without waiving" their objections. Although this is a widespread practice, it leaves the requesting party uncertain as to whether the opposing party has fully answered its request and, importantly, is not contemplated by the Federal Rules of Civil Procedure. As observed by Professor Moore, "[i]f the responding party both answers and objects to the interrogatory at the same time, the objection may be deemed waived, and the answer, if responsive, will stand." 7 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 33.174[1], at p. 33-105 (3rd ed. 2014). A proposed amendment to the Federal Rules of Civil Procedure addresses this situation as it pertains to requests for production. The proposed amendment to Rule 34(b)(2)(C) requires that an objection "state whether any responsive materials are being withheld on the basis of that objection." According to the Committee Note, the amendment is intended to "end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections." http://www.uscourts.gov/RulesAndPolicies/rules/pending-rules.aspx

anesthetic dental procedures per hospital for each of the years requested. (Doc. #245-2.) See 7 James Wm. Moore et al., Moore's Federal Practice § 33.105[1], p. 33-83 (3rd ed. 2014) (producing records pursuant to Rule 33(d) appropriate "where the burden of deriving the answer is substantially the same for the propounding party as the responding party"). The defendant's motion for a further response is denied. See, e.g., Sanders v. Levy, 558 F.2d 636, 642 n. 7 (2d Cir. 1976)(Under Rule 33(d), "a party will not be required to perform burdensome extraction of information from sources that are available to the party seeking discovery."), rev'd on other grounds, sub nom., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340 (1978); Alexander v. F.B.I., 194 F.R.D. 305, 310 (D.D.C. 2000)("A party is not required to prepare, or cause to be prepared new documents solely for their production.")

  2. Interrogatories 3 and 4 are denied. The defendant seeks "the average number of anesthetic deaths per 100 dentals performed per hospital." The plaintiffs respond that they do not track this information. The defendant does not believe the plaintiffs' response to these - and other - interrogatories. (Doc. #245 at 3-4.) The plaintiffs have provided their responses under oath. "The fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect." Gray v. Faulkner, 148 F.R.D.

6

220, 223 (N.D. Ind. 1992).  See Rong Ran v. Infinite Energy, Inc., No. 1:07cv249, 2010 WL 148240, at *1 (N.D. Fla. Jan. 12, 2010) ("Defendants have responded to Plaintiff's [discovery] requests, and the fact that Plaintiff disagrees with Defendants' responses does not provide a basis for this Court to order any relief.")

3.   Interrogatories 5 and 6,[3] which seek the number of deaths under anesthesia during dental procedures, are granted.

4.   Interrogatories 7 and 8 are granted in part and denied in part.  The defendant seeks the average number of VAAEs (vaccine-associated adverse events) per 100 vaccines from 2008 through 2012. The plaintiffs respond that they do not track all VAAEs[4]; they only track incidents of anaphylaxis after vaccination and they only have that data as of 2010.  Moreover, they do not track the average number of incidents of anaphylaxis per 100 vaccines given.  (Doc. #245-2.)  Plaintiffs shall produce the information they have: the number of incidents of anaphylaxis after vaccination per hospital, by year, from 2010 through 2012.

5.   Interrogatories 9 and 10 are granted in part and denied in part.  The defendant seeks the number of deaths due to VAAEs from 2008 through 2012.  The plaintiffs respond that they do not track the number of deaths from VAAEs.  They only track deaths from

---

[3] Interrogatories 5 - 10 are the subject of the plaintiffs' motion for protective order and motion to amend objections to assert confidentiality, discussed infra.

[4] The plaintiffs' response uses the term "VAEEs."  (Doc. #249 at 8.) The court understands the plaintiffs to mean "VAAEs."

7

anaphylaxis after vaccination and they only have this data as of 2010. (Doc. #245-2.) Plaintiffs shall produce this information.

6. Interrogatories 11 and 12 are denied. The defendant seeks the number of bacterial infections at injection sites following vaccine injections from 2008 through 2012. The plaintiffs respond that they do not track this data. (Doc. #248-2.)

7. Interrogatory 13 is denied. The defendant seeks the number of instances from 2008 through 2012 in which a veterinarian was reprimanded for falsifying records. The plaintiffs aver that they only began tracking this information in March 2011 and that they have provided the data for March 2011 through 2012. (Doc. #245-2.) The defendant's motion to compel a further response is denied.

8. Interrogatories 15 and 16 are denied. The defendant seeks the number of pets who had anesthetic procedures without first having anesthetic blood work for the period of 2008 through 2012. (Doc. #245-2.) The plaintiffs respond that they do not track this information.

9. Interrogatories 17 and 18 are denied. The defendant seeks the average number of client complaints per hospital per month from 2008 through 2012. The plaintiffs respond that they do not have the requested information. (Doc. #248-2.)

B. Attorney's Fees

The defendant's request for attorney's fees is denied. The Federal Rules of Civil Procedure provide that if a motion to compel

8

is granted in part and denied in part a court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). In this case, each party should bear its respective costs and fees. See, e.g., MASTR Adjustable Rate Mortgages Trust 2006-OA2 v. UBS Real Estate Securities Inc., No. 12 Civ. 7322, 2013 WL 5437354, at *2 (S.D.N.Y. Sept. 27, 2013) ("when motion is granted in part and denied in part, award of expenses is discretionary"); Safespan Platform Systems, Inc. v. EZ Access, Inc., No. 06CV726A, 2011 WL 7473467, at *5 (W.D.N.Y. Dec. 30, 2011) ("Given the mixed result of defendant's motion . . . the court may apportion reasonable motion expense under Rule 37(a)(5)(C) and finds that both sides should bear their own respective costs."), report and recommendation adopted, 2012 WL 777305 (W.D.N.Y. Mar. 8, 2012).

    C.   Motion for Protective Order

The plaintiffs move for a protective order to permit them to disclose certain of their interrogatory responses only to counsel, not to the parties.[5] The defendant's interrogatories seek "the number of animals who suffered an adverse vaccine reaction or died while receiving certain treatments at plaintiffs' more than 800 Banfield Pet Hospitals." (Doc. #241 at 1.)

The plaintiffs contend that this information "is highly trade

---

[5]The plaintiffs seek a protective order as to interrogatories 3 - 10. However, as is set forth above, the plaintiffs do not have responsive information as to interrogatories 3 and 4. Therefore, the protective order, if granted, would cover interrogatories 5 through 10.

9

sensitive and constitutes trade secrets." (Doc. #242 at 2.) They argue that "[i]f disclosed to the public, such information could be used to Plaintiffs' competitive disadvantage." (Doc. #241 at 2.) According to plaintiffs, "[c]ompetitors and those who harbor a dislike of Banfield Pet Hospitals, such as Defendant, would mischaracterize the data to dissuade consumers from taking their pets to Banfield Pet Hospitals, causing Plaintiffs economic harm." (Doc. #241 at 8; Aja Decl. ¶¶7-10.) In addition, the defendant must be precluded from access to this information, plaintiffs argue, because he "is not someone who can be trusted with Plaintiffs' confidential data" and "will certainly misconstrue [the data] to paint [them] in a bad light." (Doc. #247 at 6; doc. #241 at 8.)

### Legal Standard

For good cause shown, a court may "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Rule 26(c) "is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so . . . ." Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940, 944-45 (2d Cir. 1983). Rather, the "court may issue a protective order only after the moving party demonstrates that 'good cause' exists for the protection of the material." Burgess v. Town of Wallingford, No. 3:11cv1129(CSH), 2012 WL 4344194, at *6 (D. Conn. Sept. 21, 2012).

"Good cause is established by demonstrating a clearly defined and serious injury resulting from disclosure. . . . Broad allegations of harm will not establish good cause, rather to establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Hansen v. U.S. Airports Air Cargo, LLC, No 3:07cv353(JCH)(HBF), 2008 WL 4426909, at *1 (D. Conn. Sept. 26, 2008).  See also Burgess, 2012 WL 4344194, at *6 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."); Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection, 224 F.R.D. 53, 56 (D. Conn. 2004)(same).  The court has "broad discretion" to "decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

The plaintiffs contend that information about vaccine reactions and pet deaths is confidential[6] and that disclosure of "the requested data would put [them] at a competitive disadvantage."  (Doc. #242 at 7.)  Their alleged injury - that people might be dissuaded from taking their pets to plaintiffs'

---

[6]This assertion is undercut somewhat by the previous publication of the plaintiffs' VAAE statistics.  The records from 360 Banfield veterinary hospitals for the period of 2002 through 2003 were the subject of a study regarding the incidence rate and potential risk factors for VAAEs. See Moore, G.E., et al., Adverse events diagnosed within three days of vaccine administration in dogs, J. Am. Vet. Med. Assoc. 2005; 227:1102-1108.  (Doc. #244-1.) The study disclosed the number of deaths reported in association with vaccination.

11

hospitals - is speculative and falls short of Rule 26(c)'s requirement of a "particular and specific demonstration of fact." Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 356 (D. Conn. 2006).  See HSqd, LLC v. Morinville, No. 3:11cv1225(WWE)(HBF), 2013 WL 1149944 (D. Conn. 2013) (finding defendant failed to demonstrate good cause "because his alleged injury is entirely speculative in nature").  Plaintiffs have not met their burden of showing that they will suffer a "clearly defined and very serious injury" in the absence of a protective order.  Uniroyal Chem. Co., 224 F.R.D. at 56.

The plaintiffs also argue that a protective order is warranted because the defendant, and others, might embarrass them by publicizing and misstating the information.

Dissemination of pretrial discovery materials for non-judicial purposes "is unusual and rightly so."  DaCosta v. Danbury, 298 F.R.D. 37, 39 (D. Conn. 2014).

> The discovery rules are a matter of legislative grace. . . . They compel parties, including third parties, to divulge information for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes. . . . The liberality of this process creates a significant potential for abuse such as delay, expense, misuse of court process and damage to the reputation and privacy of litigants and third parties. . . .

Id. (citations and quotation marks omitted.)  "[C]ourts must be vigilant to ensure that their processes are not used improperly for purposes unrelated to their role."  Paisley Park Enterprises v. Uptown Prods., 54 F. Supp.2d 347, 349 (S.D.N.Y. 1999).

That information might embarrass plaintiffs "is not a basis for documents to be held to be 'confidential' under Rule 26." Ideal Steel Supply Corp. v. Anza, No. 02 Civ. 4788, 2005 WL 1213848, at *3 (S.D.N.Y. May 23, 2005). "Good cause is not established merely by the prospect of negative publicity." Dep't of Econ. Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 487 (S.D.N.Y. 1996). See, e.g., Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986) ("to succeed, a business will have to show with some specificity that the embarrassment resulting from dissemination of the information would cause a significant harm to its competitive and financial position"). "Case precedent suggests that even when a party admittedly seeks to publicly embarrass his opponent, no protection should issue absent evidence of 'substantial embarrassment' or harm." DaCosta v. City of Danbury, 298 F.R.D. 37, 40 (D. Conn. 2014)(quotation marks and citation omitted.)  "A risk of revelation of information that might be unpopular or might raise questions unrelated to the litigation is not sufficient to justify a protective order on the ground of confidentiality." 6 James Wm. Moore et al., Moore's Federal Practice § 26.105[8][a] p. 26-551 (3d ed. 2014).

The plaintiffs have not shown that disclosure will result in a "clearly defined and serious injury." Burgess v. Town of Wallingford, No. 3:11cv1129(CSH), 2012 WL 4344194, at *11–12 (D. Conn. Sept. 21, 2012)(declining to prohibit disclosure of deposition transcript where there was no showing of harm such as

13

misuse of information for financial or commercial gain, violation of deponent's constitutional rights, or disclosure of trade secrets that would work clearly defined and very serious injury). Accordingly, the plaintiffs' motion for a protective order is denied.

    D.    <u>Motion for Leave to Amend Objections</u>

The plaintiffs seek leave to assert an additional objection - "confidentiality" - to interrogatories 3 - 10. The motion is granted nunc pro tunc. However, as set forth above, the plaintiffs' confidentiality objection is overruled.

IV. <u>Conclusion</u>

For these reasons, the defendant's motion to compel is granted in part and denied in part, the plaintiffs' motion for protective order is denied and the plaintiffs' motion for leave to amend their objections is granted.

SO ORDERED at Hartford, Connecticut this 19th day of March, 2015.

                                      _____/s/_____
                                      Donna F. Martinez
                                      United States Magistrate Judge