```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

CHARTER PRACTICES INT'L, LLC    :
and MED. MGMT. INT'L, INC.,     :
                                :
     Plaintiffs,                :
                                :
v.                              :    Case No. 3:12-cv-1768 (RNC)
                                :
JOHN M. ROBB,                   :
                                :
     Defendant.                 :
                                :

## RULING AND ORDER

Pending is plaintiffs' motion for summary judgment on their breach of contract and CUTPA claims and Dr. Robb's counterclaims. Pls.' Mot., ECF No. 268.[1]  Judge Martinez has recommended that the motion be denied. Recc. Ruling, ECF No. 335. Plaintiffs have objected to the recommended ruling. Pls.' Obj., ECF No. 336. Familiarity with the recommended ruling and objection is presumed.

Since the recommended ruling was filed, the record has been supplemented to include the Memorandum of Decision of the Board of Veterinary Medicine of the Connecticut Department of Health issued in disciplinary proceedings against Dr. Robb on February 1, 2017. Pls.' Mot. Leave File Suppl. Materials Ex. A, ECF No. 344-2.  Familiarity with the memorandum is also presumed.

---

[1] The motion does not address plaintiffs' trespass and defamation claims.

Plaintiffs contend that the Board's decision requires entry of summary judgment in their favor on the claims and counterclaims arising from the termination of Dr. Robb's franchise.  I agree.  I also conclude that plaintiffs are entitled to summary judgment on Dr. Robb's counterclaim for negligent infliction of emotional distress.

I.

Plaintiffs have demonstrated that issue preclusion prevents Dr. Robb from relitigating the issues determined by the Board.

The Board's decision can have preclusive effect in this case.  When "a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Univ. of Tenn. v. Elliott, 478 U.S. 788, 799 (1986) (citation omitted) (quoting Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966)).

In order for issue preclusion to apply, the issue must have been fully and fairly litigated, it must have been actually decided, and the decision must have been necessary to the judgment.  Lafayette v. Gen. Dynamics Corp., 255 Conn. 762, 772, 770 A.2d 1, 9 (2001).  All three elements are satisfied with regard to the issues of consequence to this action.

2

Dr. Robb argues that the issues decided by the Board differ from the issues in this case. But plaintiffs seek to invoke issue preclusion only to the extent there is an identity of issues.

Dr. Robb states that the Board did not "find facts on the science" but instead "mechanically applied the statute and rule" and did so without regard to his "ethical convictions." Def.'s Mem. Opp'n 4-5, ECF No. 347. I cannot agree with that description of the Board's decision. The decision states:

> [Dr. Robb's] misconduct of under-vaccinating animals for rabies endangered their lives and those around them. The Department's expert stated that under-vaccination could potentially provide the vaccinated animals with less protection, which "could result in the animal getting a zoonotic disease that's potentially fatal to people." Tr. 3/27/2015, p. 11. In the situation when an animal is suspected of having contracted rabies, the Board notes that the animal must be quarantined and may be killed in order to examine whether it did in fact contract rabies. See, Conn. Gen. Stat. § 22-359(a) and (b).
> Therefore, due to the serious consequences that could result from under-vaccination for rabies, and [Dr. Robb's] ardent belief that under his Aesculapian authority he does not have to vaccinate animals in accordance with state laws and regulations (Tr. 1/27/2016, p.p. 49, 122; Tr. 2/23/2016, pp. 130, 132-33), the Board orders that [his] license to practice veterinary medicine be place[d] on probation for a period of twenty-five (25) years under the terms and conditions listed below.

Pls.' Mot. Leave File Suppl. Materials Ex. A, at 10, ECF No. 344-2.

3

The decision prohibits Dr. Robb from administering rabies vaccinations to any animal for the entire probationary period of twenty-five years. No doubt the Board imposed this condition because it was concerned that Dr. Robb's ethical convictions do not permit him to vaccinate animals as required by state law and regulations.

Dr. Robb contends that the interests served by issue preclusion are outweighed by the interest in having a jury consider the issues in this particular case. Because the elements of issue preclusion are satisfied, however, Dr. Robb is not entitled to relitigate the issues. No exception to issue preclusion applies here.

Dr. Robb contends that this case should be allowed to proceed to a jury trial because he has "an authority bestowed . . . by God himself which supersedes any man-made laws." Def.'s Mem. Opp'n 6, ECF No. 347. However, as Judge Haight explained in dismissing Dr. Robb's complaint against the Board:

> The Rule of Law that courts such as this one enforce is a secular law. The Constitution places spiritual questions beyond the competence of courts. If Connecticut's rules with respect to rabies vaccine dosages should be changed, the Legislature and Governor must be asked to change them.

Robb v. Conn. Bd. of Veterinary Med., 157 F. Supp. 3d 130, 147 (D. Conn. Jan. 20, 2016).

Dr. Robb contends that the Board's decision does not preclude relitigation because the decision is not final. It is well settled, however, that "res judicata and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending." Chariot Plastics, Inc. v. United States, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (citing Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988)).

For all these reasons, issue preclusion prevents Dr. Robb from relitigating issues already decided by the Board. This means that Dr. Robb is precluded from relitigating whether his vaccine protocol violated Connecticut law and the standard of care.[2]

---

[2] Of particular relevance here, the Board found that "[t]he standard of care require[d] that [Dr. Robb] comply with the statutory and regulatory requirements for rabies vaccination for dogs." Mem. of Decision 7, ECF No. 344-2. In Connecticut, the Board found, the method of administering the rabies vaccine, such that the animal is legally vaccinated, requires "vaccinating in accordance with the USDA licensed vaccine label directions." Id. The Board found that Dr. Robb's vaccine protocol "diverged from the rabies vaccine label instructions, which provided for the full vaccine dose of one millimeter to be administered regardless of the weight of the animal." Id. The Board concluded that Dr. Robb's instruction to administer half doses of rabies vaccine to dogs under 50 pounds was a prima facie violation of Connecticut General Statute § 22-359b and Connecticut Agencies Regulations § 22-359-1. Id. The Board also found that his employees' use of unused half doses of rabies vaccine on animals pursuant to his instructions constituted a breach of the standard of care and he failed to obtain informed consent from a pet owner when he administered half doses of rabies vaccine to her dog without informing her that he was statutorily required to use a full dose, the reason the full dose was not used, his ability to apply for a rabies vaccine exemption from the Department of

II.

Under the CPA, Dr. Robb was not permitted to violate the law and the franchise could be terminated immediately in the event of a violation. Because the Board's findings establish that there was a serious violation, plaintiffs are entitled to summary judgment on their breach of contract claim and Dr. Robb's breach of contract counterclaim.

III.

Plaintiffs argue that Dr. Robb's practice of administering half-doses of rabies vaccine, as found by the Board, violated CUTPA as a matter of law. I agree.[3]

In determining whether a practice violates CUTPA, courts consider (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. Fabri v. United Tech. Int'l, Inc., 387 F.3d 109, 120 (2d Cir. 2004). Only one of these criteria needs to be met. Id.

---

Agriculture, and the risks associated with failure to use a full dose. Id. at 8-9.

[3] Because plaintiffs are entitled to summary judgment on the CUTPA claim on the basis of Dr. Robb's practice of administering half-doses, it is unnecessary to consider the allegations of other misconduct by Dr. Robb that are advanced by plaintiffs in support of this claim.

6

When a CUTPA claim is predicated on a breach of contract, the claim may fail unless the plaintiff proves "substantial aggravating circumstances attending the breach of contract." Bartold v. Wells Fargo Bank, No. 14-cv-00865 (VAB), 2015 WL 7458504, at *6 (D. Conn. Nov. 24, 2015) (quoting Eclipse Sys, Inc. v. Harrell, No. MMXCV106003857S, 2011 WL 2480405, at *2 (Conn. Super. Ct. May 25, 2011)). This requirement may be satisfied by proof of multiple breaches of contract. See Reich v. Spencer, No. HHDCV075012682S, 2010 WL 5573735, at *21 (Conn. Super. Ct. Dec. 10, 2010).

Plaintiffs have satisfied their burden of proving a CUTPA violation based on the Board's finding that Dr. Robb's practice of administering half-doses of rabies vaccine was unlawful and dangerous. The Board found that Dr. Robb engaged in this practice from July 2010 through February 2012. Mem. of Decision 9, ECF No. 344-2. Each time Dr. Robb followed this practice, he breached the CPA. Plaintiffs' motion for summary judgment as to the CUTPA claim is therefore granted.

## IV.

Dr. Robb's counterclaim for breach of contract alleges a violation of the Connecticut Franchise Act, Conn. Gen. Stat. § 42-133e, which provides that a franchise cannot be terminated without good cause and 60 days' notice. Def.'s Am. Answer 20, ¶¶ 33-35, ECF No. 159. Dr. Robb's violation of Connecticut law, as

7

found by the Board, provided good cause for the termination. Whether he was deprived of 60 days' notice requires further discussion.

The termination notice, issued December 7, 2012, stated that the franchise was terminated effective February 5, 2013, exactly 60 days after the date of the notice. Notice of Termination 15-16, ECF No. 225-5. The notice also informed Dr. Robb that Banfield would step in and operate the franchise until the termination date. Id. Plaintiffs contend that exercising step-in rights is not equivalent to terminating a franchise. Dr. Robb disagrees and points to a Banfield document dated December 13, 2012, which was issued to personnel who were then operating the franchise. The document asked them to respond to any press inquiries by stating, "Dr. Robb no longer owns a Banfield hospital." Def.'s Mem. Opp'n Ex. Z3, ECF No. 282-29 ("the Banfield document").

The Franchise Act is silent with regard to the legal status of a franchise operation within the 60-day window at issue here. However, "[c]ontract interpretation turns on an objective examination of the reasonable meaning of the text of the agreement." Sea Shipping Inc. v. Half Moon Shipping, LLC, 848 F. Supp. 2d 448, 457 (S.D.N.Y. 2012). When the text of an agreement is clear, there is no need to examine extrinsic evidence. Id.

The CPA makes it clear that the franchisee owns the hospital

8

until the date of termination. The CPA states that during the step-in period, revenue will accrue to the franchisee's account. In this case, the notice of termination confirmed that revenue would be credited to Dr. Robb's account until February 5, 2013, at which point the termination would occur. Because there is no ambiguity in the CPA, extrinsic evidence such as the Banfield document does not raise a triable issue. Therefore, plaintiffs' motion for summary judgment on this counterclaim is granted.

V.

Dr. Robb's counterclaim for breach of the covenant of good faith and fair dealing alleges that plaintiffs "exercised their business judgment in an unreasonable manner and in bad faith" in terminating the CPA and exercising their step-in rights. Def.'s Am. Answer 19, ¶ 28, ECF No. 159. In his opposition to plaintiff's summary judgment motion, Dr. Robb also asserts that they acted in bad faith in attempting to consolidate company ownership of Banfield hospitals by searching for reasons to terminate franchisees' CPAs. Def.'s Am. Answer 13-14, ¶¶ 12-14, ECF No. 159.

The duty of good faith and fair dealing is "a covenant implied into a contract or a contractual relationship . . . [E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Anderson v. Governor & Co. of the Bank of Ireland, No. 3:11-cv-355 (VLB),

2011 WL 6001621, at *6 (D. Conn. Nov. 30, 2011) (alteration in original) (quoting De La Concha of Hartford, Inc. V. Aetna Life Ins. Co., 269 Conn. 424, 432 (2004)). The duty requires "neither party to a contract to do anything that will injure the right of the other to receive the benefits of the agreement." Clouston v. On Target Locating Servs., No. 3:01 CV 2404 DJS, 2005 WL 2338883, at *6 (D. Conn. Aug. 19, 2005).

To recover on this claim, Dr. Robb must show (1) he and the plaintiffs were parties to a contract under which he reasonably expected to receive certain benefits, (2) plaintiffs engaged in conduct that injured his right to receive some or all of those benefits, and (3) they acted in bad faith. Id.

As discussed above, the Board's findings compel the conclusion that plaintiffs were entitled to terminate the CPA and exercise their step-in rights to operate the franchise. Dr. Robb's violations of state law gave them a legal right to do so. Dr. Robb could not have a reasonable expectation that they would refrain from doing so, particularly given his insistence that his practice of administering half-doses was necessary and appropriate. Accordingly, the motion for summary judgment is granted on this counterclaim.

VI.

Dr. Robb's counterclaim under CUTPA alleges that plaintiffs "embark[ed] on an unlawful plan to de-franchise the BANFIELD® pet

10

hospital network and make most of the BANFIELD® pet hospitals company-owned." Def.'s Am. Answer 13, ¶ 12, ECF No. 159. They did so, he alleges, by making a below-market offer to repurchase franchises from owners, and, if unsuccessful, would abuse its business judgment "in an unreasonable and unjustified manner." Id. at 14, ¶ 14. Even assuming plaintiffs had a business plan to centralize ownership of the Banfield pet hospitals, the Board's findings establish that Dr. Robb engaged in conduct that violated Connecticut law and created a danger to pets and people. In view of the Board's decision, plaintiffs did not breach the CPA by terminating Dr. Robb's franchise and summary judgment is therefore proper on his CUTPA claim.

## VII.

Dr. Robb's counterclaim for negligent infliction of emotional distress is based on events that occurred after he received the termination notice. To prevail on this claim, he must prove the following: the plaintiffs' conduct created an unreasonable risk of causing him emotional distress, his distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and the plaintiffs' conduct was the cause of his distress. Carrol v. Allstate Ins. Co., 262 Conn. 433, 442, 815 A.2d 119, 126 (2003). In order to avoid summary judgment on this claim, Dr. Robb must "set out specific facts showing a genuine issue for trial," Fed. R. Civ.

P. 56(e), and cannot rely upon "self-serving affidavits, sitting alone," to create a triable issue of fact. Dowd v. City of New York, No. 11 Civ. 9333(KBF), 2012 WL 5462666, at *1 (S.D.N.Y. Nov. 5, 2012). Dr. Robb has not met this burden. His only supporting evidence is his own affidavit. His testimony as set forth in the affidavit is inadmissible with regard to some of the factual matters essential to his claim. In the absence of admissible evidence sufficient to permit a jury to find in favor of Dr. Robb, the motion for summary judgment is granted on this claim as well.

## VIII.

Accordingly, the motion for summary judgment is granted on plaintiff's first and second claims for relief and all four counterclaims. As a result of this ruling, the only claims that remain open are plaintiffs' claims for trespass and defamation. It is unclear whether plaintiffs will want to pursue those claims or simply withdraw them because they have stated that no trial is necessary in this case. It is also unclear whether plaintiff's will seek to prove compensatory damages, which also could require a trial.

Plaintiffs will file and serve a statement, on or before October 14, 2017, informing the Court and Dr. Robb of their intentions with regard to the trespass and defamation claims and their requests for compensatory damages.

So ordered this 30th day of September 2017.

                              /s/RNC
                         Robert N. Chatigny
                      United States District Judge