```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| CHARTER PRACTICES INTERNATIONAL, LLC, MEDICAL MANAGEMENT INTERNATIONAL, INC., | : : : : : |
| Plaintiffs, | : Case No. 3:12-CV-01768(RNC) |
| v. | : : |
| JOHN M. ROBB, | : : |
| Defendant. | : |

<u>RULING AND ORDER</u>

In this breach of contract case, plaintiffs Charter Practices International, LLC ("CPI") and Medical Management International, Inc. ("MMI") have moved for an order requiring defendant John M. Robb, D.M.V. ("Dr. Robb") to reimburse them for attorneys' fees and costs pursuant to the parties' contract, known as the "Charter Practice Agreement" ("CPA"), which contains a fee-shifting provision entitling the prevailing party in a legal proceeding to recover costs and reasonable attorneys' fees.[1]  The motion is granted in part.

I.

Pursuant to the CPA, Dr. Robb operated a Banfield Pet Hospital in Stamford as plaintiffs' franchisee.  Plaintiffs informed Dr. Robb that he was in violation of the CPA due to his practice of administering half doses of rabies vaccines to dogs weighing less than 50 pounds.  Dr. Robb maintained that his vaccine protocol was within the standard of care, and thus

---

[1] Section 12.14 of the CPA provides, "[t]he prevailing party in any arbitration, insolvency proceeding, bankruptcy proceeding, suit or other legal action (other than mediation under Section 12.9) between [Defendant] and CPI or its affiliates (a "Legal Proceeding") is entitled to recover its arbitration costs, court costs, and reasonable attorney's fees, including investigative costs and attorney's fees incurred before commencement of the Legal Proceeding in connection with the matters involved in the Legal Proceeding and costs and attorney's fees incurred on appeal or review from the Legal Proceeding."

1

permitted by the CPA, because it reduced adverse reactions. Plaintiffs then notified Dr. Robb that they were exercising their CPA-granted right to step in and operate the Hospital pending termination of his franchise in 60 days. Dr. Robb protested his ouster in various ways, so plaintiffs brought this suit seeking to enjoin him from interfering with their operation of the Hospital. Dr. Robb responded by filing counterclaims. The Connecticut Board of Veterinary Medicine subsequently initiated licensing proceedings against Dr. Robb based on his vaccine protocol. After an evidentiary hearing, the Board found that his use of half doses of the rabies vaccine violated state law. See Robb v. Conn. Bd. of Vet. Med., 204 Conn. App. 595 (2021)(affirming judgment dismissing Dr. Robb's appeal). The Board's ruling precluded Dr. Robb from relitigating the validity of his vaccine protocol here. On this basis, plaintiffs obtained summary judgment on their claims and Dr. Robb's counterclaims.

II.

Plaintiffs claim to have incurred costs and attorneys' fees of more than $1 million.[2] They seek reimbursement for fees in the total amount of $983,653 for work done by two law firms: Quarles & Brady, LLP, and Greenberg & Traurig, LLP. Quarles & Brady served as lead counsel for plaintiffs from the inception of the case in 2012 until Greenberg & Traurig took over as substitute lead counsel in 2016.

Dr. Robb does not object to plaintiffs' request for fees based on work performed by Greenberg & Traurig in the amount of $127,977.47, or plaintiffs' request for an award of costs in the amount of $72,979.39. Both requests are therefore granted.

However, Dr. Robb does oppose plaintiffs' request for fees for work performed by Quarles & Brady. He does not object to the lawyers' hourly rates, nor to any specific billing entries. He instead argues that the fee request should be reduced by two-thirds because (1) the fees sought - $855,675.74 - greatly exceed the amount of damages recovered – $148,689.52; (2) Quarles & Brady engaged in "scorched-earth" litigation tactics; and (3) much of the work was unsuccessful. For reasons detailed

---

[2] "The litigation [has been] intense, long, and bitterly disputed." Recommended Ruling on Plaintiffs' Motion for Sanctions at 10 (Feb. 1, 2016), ECF 330.

2

below, I conclude that the work performed by Quarles & Brady warrants a reasonable fee award of $320,231.

III.

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975) (tracing the origins and development of the "American Rule"). However, under Connecticut law, "[a] successful litigant is entitled to an award of attorney's fees if they are provided by contract." Jones v. Ippoliti, 52 Conn. App. 199, 209 (1999); Storm Assocs., Inc v. Baumgold, 186 Conn. 237, 245 (1982).

The reasonableness of an attorney's fee depends upon "many considerations." Piantedosi v. Fla., 186 Conn. 275, 279 (1982). "Time spent is but one factor . . . ." Andrews v. Gorby, 237 Conn. 12, 24 (1996). The burden rests on the fee applicant to prove the reasonableness of the compensation requested by a preponderance of the evidence. Id. at 23. The factors for evaluating a fee's reasonableness include:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly.
>
> (2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar services.
>
> (4) The amount involved and the results obtained.
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) Whether the fee is fixed or contingent.

Id. n. 19 (quoting Rule 1.5 of Rules of Professional Conduct). See Johnson v. Ga. Highway Express, Inc., 488 F. 2d 714, 718

(5th Cir. 1974) (listing 12 factors for determining amount of attorney's fee award in action under Civil Rights Act of 1964); Bernhard-Thomas Bldg. Sys., LLC v. Weitz Co., LLC, 3:04-CV-1317, 2011 WL 5222682, at *4 (D. Conn. Oct. 31, 2011)(noting that Connecticut courts apply the Johnson factors).

    Determining the amount of a reasonable fee award requires an exercise of equitable discretion informed by careful consideration of the relevant factors in the particular context of the given case. See John Wiley & Sons, Inc. v. Kirtsaeng, 605 Fed. Appx. 48, 49 (2d Cir. 2015) ("Attorney's fees must be reasonable in terms of the circumstances of the particular case."); GMA Accessories, Inc. v. Olivia Miller, Inc., 139 Fed. Appx. 301, 304 (2d Cir. 2005)("the district court should exercise its equitable discretion in light of all relevant factors."). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to amount for the limited success. The court necessarily has discretion in making this equitable judgment." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

    In commercial cases, the court's task is to award a fee that reflects the reasonable value of services that were necessarily performed to litigate the case effectively. See Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 52 (S.D.N.Y. 2015)(copyright infringement case). The test is not whether a lawyer could reasonably bill a client for the particular service. It is, rather, whether a lawyer could reasonably expect to shift the cost to the client's adversary. See id. In applying this test, a court may consider whether and to what extent the work achieved the desired result. See id. at 49-50 (declining to award fees for work relating to unsuccessful Daubert motions).[3]

    To establish an adequate foundation for a fee award based on a fee-shifting provision in a contract, it is imperative that counsel maintain billing records that enable opposing counsel

---

[3] Plaintiffs correctly note that "not every loss suffered over the course of a lengthy litigation is cause for a reduction in attorneys' fees, particularly where the relevant application was reasonable when made." Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 543 (S.D.N.Y. 2008). By the same token, however, not every motion that is legally permissible justifies an award of fees. Accordingly, in deciding whether a given motion warrants a fee award, I have considered each one in light of the relevant Johnson factors.

and, if necessary, the court, to see whether time was spent on matters necessary to litigate the case effectively. To that end, counsel must avoid "block billing." Time spent by counsel communicating with the client by telephone, email or in person may provide a basis for fee-shifting only if billing entries substantiate time spent discussing matters essential to counsel's work on the case. And, when the time comes to seek fees, counsel must exercise "billing judgment" and refrain from seeking fees that, in fairness, the opposing party should not bear.

IV.

The analysis set forth below is based on careful review and assessment of the billing entries in light of the relevant <u>Johnson</u> factors, with the goal of achieving an equitable award that distributes the litigation's burdens in a manner consistent with the parties' reasonable expectations under the CPA. I have divided the four years encompassed by the fee request into five periods. For each period, I have examined each billing entry in an effort to determine whether and to what extent an entry supports a reasonable award.

<u>PERIOD 1: 12/6/12 – 12/18/12</u>

During this period, plaintiffs' counsel worked on drafting and filing the complaint, motions for a temporary restraining order and preliminary injunction, and proposed orders. The motion for a TRO was successful; Dr. Robb was enjoined from entering the premises of the Pet Hospital and adjacent parking lot. The billing records reflect the following hours:

Jeffrey H. Wolf (JHW):      41 hours

Sarah R. Anchors (SRA):     35 hours

Aaron C Schelper (ACS):     13 hours

It is unclear from the records how much time each lawyer spent on each document. Applying the <u>Johnson</u> factors, I find that fees should be awarded as follows:

JHW: 30 hours @ $425      $12,750

SRA: 25 hours @ $260      $6,500

ACS: 10 hours @ $270      $2,700

Total: $ 21,950

PERIOD 2: 12/19/12-2/1/13

During this period, plaintiffs' counsel worked on (1) preparing and filing an emergency motion for contempt and to modify the TRO, and (2) preparing for and attending an evidentiary hearing before Magistrate Judge Martinez on the plaintiffs' motions for contempt and a preliminary injunction. The motion to modify the TRO was denied, and the motions for a preliminary injunction and contempt were denied as moot following the expiration of the CPA on February 5, 2013. The billing records reflect the following hours:

JHW: 230 hours

SRA: 191 hours

ACS: 10 hours

Benjamin C. Nielsen (BCN): 7 hours

After careful review of each entry, I find that the total amount of time devoted to the motions for a preliminary injunction and contempt is excessive. The central issue presented by the preliminary injunction motion was whether Dr. Robb's insistence on administering half doses of the rabies vaccine to dogs weighing less than 50 pounds, in contravention of manufacturers' labelling, violated the CPA and thus entitled plaintiffs to exercise their step-in rights. This was primarily an issue of law. The excessiveness of the time spent is mitigated by Judge Martinez's finding that the unusual length of the hearing (approximately 22 hours over 7 sessions) was largely due to the "considerable latitude" afforded Dr. Robb, who was self-represented at the time. It is further mitigated by plaintiffs' counsel's submission of a motion on January 17 that the pending motions be resolved on the papers. Balancing these considerations in light of the Johnson factors, I find that it is reasonable to award fees as follows:

JHW:   $40,000

SRA:   $30,000

ACS:    $2,500

BCN:    $1,000

Total: $73,500

PERIOD 3: 2/2/13-11/27/13

During this period, plaintiffs' counsel filed and briefed (1) a motion to dismiss Dr. Robb's counterclaims, which was denied as moot after he was given leave to file an amended answer and counterclaims; (2) a motion for leave to file an amended complaint, which was granted; (3) an unsuccessful opposition to Dr. Robb's motion for leave to amend his answer and counterclaims; and (4) an unsuccessful motion to dismiss Dr. Robb's amended counterclaims. In addition, plaintiffs' counsel engaged in case management planning, the preparation of discovery requests, and the filing of a largely successful motion to compel. The billing records reflect the following total hours:

JHW: 262 hours

SRA: 116 hours

ACS: 17 hours

The primary issue with regard to this time period is whether it is reasonable to shift to Dr. Robb the fees incurred by plaintiffs in moving to dismiss his counterclaims, both initially and after amendment. I find that it is not. Judge Martinez recommended that the motion to dismiss the amended counterclaims be denied, and her recommendation was adopted without objection. As her ruling explains, the arguments made in support of the motion to dismiss the counterclaims could not succeed if Dr. Robb's allegations were accepted as true. Block billing makes it difficult to determine the amount of time spent on the motions to dismiss the counterclaims. Based on my review of each entry, I estimate that the following hours were devoted to the unsuccessful motions:

JHW: 55 hours, leaving 207 hours

SRA: 34 hours, leaving 82 hours

ACS: 11 hours, leaving 6 hours

Of the remaining hours billed during this period, 34 were spent on the motion to compel for which plaintiffs have already been compensated. Accordingly, these hours are subtracted.

JHW: 18 hours, leaving 189 hours

SRA: 16 hours, leaving 66 hours

Additional reductions are necessary. Numerous entries for this period are not fully compensable because they fail to

7

provide sufficient information to support an award, involve matters collateral to the litigation, or appear excessive. Examples of each are: (1) an entry by JHW on 3/4/13 for 4.2 hours for "Review of order referring case to [Judge] Martinez for a ruling on motion for extension of time to conduct prefiling conference"; (2) an entry by JHW on 6/7/13 for 3.1 hours for "Work on case"; and (3) an entry by JHW on 9/10/13 for 4.5 hours for "Email to internet poster re: Robb conduct; work on case; emails from and to opposing counsel."

In addition, there are numerous entries by JHW for telephone calls and emails with "J. Eudy." No doubt some of these calls and emails were necessary to litigate the case effectively. But the entries often fail to specify the subject matter of the communication, and it appears that many involved collateral matters (e.g. "security") or were in the nature of keeping the client informed (e.g. "update on case"). It can be proper for a lawyer to bill a client for such services, but it is not reasonable to expect fees of this nature to be paid by the client's adversary.

Hours billed during this period also include time spent on what became an unsuccessful motion for sanctions based on an alleged fraud on the court. At the close of the hearing on the preliminary injunction motion, Dr. Robb submitted an affidavit of Andrew Tanner, a veterinarian technician, describing Dr. Robb's vaccination protocol. After the CPA's expiration, plaintiffs' counsel filed the motion for sanctions, alleging that Dr. Robb committed a fraud on the court by bribing Tanner to sign the affidavit. Following an evidentiary hearing, Judge Martinez found in Dr. Robb's favor on the facts and the law. I find that the fees incurred by plaintiffs in connection with this unsuccessful motion cannot reasonably be shifted to Dr. Robb.

Finally, hours billed for this period include time spent opposing Dr. Robb's motion to amend the complaint and counterclaims. Plaintiffs opposed the motion on the grounds that it was untimely, that there was no good cause for the delay, and that the amendments would be futile. Judge Martinez granted the motion. I decline to shift the fees for this unsuccessful motion.

Accordingly, fees for this period are awarded as follows:

JHW: 120 hours @ $425    $51,000

```
SRA: 50 hours @ $260      $13,000
ACS: 6 hours @ $270       $1,620
Total: $65,620
```

PERIOD 4: 12/02/13 – 6/3/14

During this period, plaintiffs' counsel worked on (1) the unsuccessful motion for sanctions discussed earlier, (2) expert discovery, (3) taking and defending depositions, and (4) motions to preclude all three of Dr. Robb's experts under Daubert.  The billing records reflect the following hours:

```
JHW:  327 hours
SRA:  233 hours
ACS:   37 hours
Cody Huffaker (CH): 17 hours
```

The main issue with regard to this time period is whether fees should be awarded for time spent on the Daubert motions (as distinct from time spent on other matters relating to expert witnesses, such as deposition preparation).  Plaintiffs filed motions to exclude the following experts: (1) W. Jean Dodds, D.V.M., a veterinarian in the field of immunology for 50 years, who supported Dr. Robb's claim that his vaccine protocol was in accordance with the standard of care; (2) Patricia Jordan, D.V.M., a veterinarian with 25 years of experience in practice, whose opinion similarly supported Dr. Robb's position; and (3) Gary M. Crakes, Ph.D., an economist, who provided a report supporting Dr. Robb's counterclaim for lost business profits.  The motion to exclude Dr. Dodds as an expert failed in all respects, as did the motion to exclude Dr. Crakes.  The motion to exclude Dr. Jordan was granted because her opinions were based on personal experience and anecdotal evidence.

I find that fees for time spent on the unsuccessful motion to exclude Dr. Dodds should not be shifted to Dr. Robb.  Time spent on the motion to exclude Dr. Crakes stands on a different footing because his opinion, if accepted, would support an award of lost business profits of between $3.3 and $6.6 million.  Although he had vast experience as an economic consultant in non-commercial cases, he lacked experience in calculating lost business profits.

9

The billing entries are insufficiently specific to permit a finding of how much time was spent on each motion.  Based on my review of each entry, I find that the following reductions are warranted:

JHW: 40 hours, leaving 287 hours

SRA: 32 hours, leaving 201 hours

ACS: 19 hours, leaving 18 hours

CH:  15 hours, leaving 2 hours

Further reductions are warranted for time spent on the unsuccessful motion for sanctions discussed earlier:

JHW: 20 hours, leaving 267 hours

SRA:  7 hours, leaving 194 hours

Based on the foregoing, fees for this period, prior to any further reduction, are as follows:

JHW: 267 hours @ $425      $113,475

SRA: 194 hours @ $270       $52,380

ACS: 18 hours @ 270          $4,860

CH:   2 hours @ $240           $480

Subtotal: $171,195

Other entries for this period are not fully compensable because block billing and a lack of specificity prevent me from finding that the time spent was reasonably necessary to effectively litigate the case.  Accordingly, a further reduction of 33% is warranted.

Total: $114,701

PERIOD 5: 6/4/14 – 2/17/16

During this period, plaintiffs' counsel worked on matters other than this litigation: the licensing proceedings before the Connecticut Board of Veterinary Medicine and an antitrust case filed by Dr. Robb.  The billing records submitted here encompass this work.  It is unclear whether and to what extent plaintiffs seek reimbursement of any of these fees.  In any case, plaintiffs have not demonstrated that fees incurred in other

10

proceedings should be reimbursed in this one.  Accordingly, I award no fees for this work.

The work performed by plaintiffs' counsel in the litigation before this court during this time period included: (1) briefing and arguing the plaintiffs' entitlement to summary judgment on their claims and Dr. Robb's counterclaims, (2) litigating the motion for sanctions based on Dr. Robb's alleged fraud on the court, (3) opposing a motion to compel discovery by Dr. Robb, and (4) moving for a protective order.

Taking these matters in turn, a motion for summary judgment was filed on June 16, 2014, and denied on March 19, 2015, without prejudice to reinstatement following further discovery. The motion was reinstated on May 27, 2015.  While the motion was pending, substitute counsel appeared for plaintiffs on February 17, 2016.  Judge Martinez then issued a ruling recommending that the motion be denied on the merits.  Plaintiffs' substitute counsel objected to the recommended ruling.  While the objection was pending, the Board ruled against Dr. Robb in the licensing proceedings, finding that his practice of administering half doses of the rabies vaccine violated state law.  Plaintiffs' new counsel then filed a supplemental memorandum in support of summary judgment based on the Board's ruling.  I concluded that the ruling had preclusive effect and therefore granted summary judgment in favor of plaintiffs on their breach of contract and CUTPA claims, as well as summary judgment in their favor on the counterclaims.

Dr. Robb contends that, since summary judgment was granted based on the Board's decision, rather than on the motion filed by Quarles & Brady, fees should not be awarded for their work on the motion.  Plaintiffs respond that the motion was based primarily on their contention that Dr. Robb's use of half doses of the rabies vaccine violated state law.  I agree that plaintiffs should receive some reimbursement for the motion because the Board's ruling ultimately vindicated their argument, compelling a grant of the motion.

Based on my review of each billing entry for this period, my best estimate is that the following hours were spent on the motion for summary judgment:

JHW: 84 hours

SRA: 70 hours

11

ACS: 16 hours

I find that a reduction of 50% is warranted under the circumstances as follows:

JHW: 42 hours @ $425    $17,850

SRA: 35 hours @ $270    $9,450

ACS:  8 hours @ $270    $2,160

Subtotal: $29,460

Turning to the remaining matters, no fees are awarded for time spent in connection with the unsuccessful motion for sanctions. As discussed above, I do not think it would be reasonable to shift these fees to Dr. Robb.

The motion to compel was only partially successful, and the motion for protective order was denied. Even so, I find that some reimbursement for time spent opposing the motion to compel and for other discovery-related activities during this period is warranted. In addition, billing entries relating to miscellaneous other activities support a partial award. Accordingly, I find that an additional award of $15,000 is reasonable.

Total: $44,460

V.

The foregoing analysis supports a fee award of $320,231.

I have considered whether this amount should be adjusted upward in light of plaintiffs' success in obtaining injunctive relief against Dr. Robb and defeating his counterclaims, or downward in light of the other costs and fees that are being shifted to Dr. Robb for plaintiffs' benefit.

After careful consideration of the parties' submissions in light of the history of the litigation as a whole, and the relevant Johnson factors, I conclude that no adjustment is warranted in either direction.

VI.

Accordingly, the motion for fees and costs is hereby granted in part as follows:

Costs: $72,979.39

Greenberg & Traurig fees: $127,977.47

Quarles & Brady fees: $320,231.

So ordered this 13th day of September 2024.

/s/ RNC
Robert N. Chatigny
United States District Judge